**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BANCO SAFRA S.A. – CAYMAN ISLANDS BRANCH, | **Civil Action No.:** |
| Plaintiff, | **COMPLAINT** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| ANDRADE GUTIERREZ INTERNATIONAL S.A., CONSTRUTORA ANDRADE GUTIERREZ S.A., ANDRADE GUTIERREZ S.A., OTÁVIO AZEVEDO, and LEANDRO DE AGUIAR, | |
| Defendants. | |

Plaintiff Banco Safra S.A. – Cayman Islands Branch ("Plaintiff"), by its undersigned attorneys, for its complaint against Defendants Andrade Gutierrez International S.A. ("AG International"), Construtora Andrade Gutierrez S.A. ("Construtora AG"), Andrade Gutierrez S.A. ("Andrade Gutierrez"), Otávio Azevedo, and Leandro de Aguiar, alleges the following based upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the offering memorandum (the "Offering Memorandum") published by Construtora AG and AG International in connection with AG International's offering of 4.000% notes, in the aggregate principal amount of $500 million, due 2018 (the "2018 Notes"), with Construtora AG as guarantor; press releases issued by Andrade Gutierrez between April 24, 2013 and July 29, 2015 (the "Relevant Period"); as well as media and analyst reports about the

companies. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is an action on behalf of Plaintiff, as a purchaser of AG International's 2018 Notes, seeking to recover compensable damages caused by Defendants' violations of the Exchange Act of 1934 (the "Exchange Act") and alleging negligent misrepresentation, common law fraud, and unjust enrichment by Defendants.

2.     Construtora AG is one of the largest companies in the engineering and heavy construction sector in Latin America and the second largest in Brazil in terms of net revenue. Construtora AG engages in the construction of large and complex infrastructure projects, having participated in the construction of hydroelectric projects, roads, bridges, refineries, power plants, and stadiums. AG International, the issuer of the 2018 Notes, is a non-operational finance vehicle, established in 2013 specifically to raise capital for the Andrade Gutierrez Group, a private Brazilian multinational conglomerate. Construtora AG is the core business of the Andrade Gutierrez Group. AG International and Construtora AG are both wholly owned subsidiaries of Andrade Gutierrez.

3.     In 2013, AG International conducted a debt offering of 4.000% notes, in an aggregate principal amount of $500 million, due April 30, 2018. Construtora AG is the guarantor of the 2018 Notes, and in its capacity as guarantor, Construtora AG was the primary author of the Offering Memorandum for the 2018 Notes and made the majority of the statements therein.

4.     In 2014, in the course of an investigation dubbed Operation Lava Jato (in English, "Car Wash"), Brazilian investigators uncovered a sprawling corruption scheme centered on the Brazilian petroleum company Petróleo Brasiliero S.A. – Petrobras ("Petrobras"). Initially a money

laundering investigation, Operation Lava Jato revealed the collusion of top Petrobras officials with an organized cartel of at least 16 companies to overcharge Petrobras for construction and service work in exchange for bribes and kickbacks totaling nearly $3 billion.

5.      In the Offering Memorandum for AG International's 2018 Notes and in press releases during the Relevant Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Andrade Gutierrez and certain of its officers, including its Chief Executive Officer ("CEO"), Otávio Azevedo, had participated in a multibillion dollar organized bribery scheme, in collusion with other companies, to overcharge Petrobras for construction and service work; (ii) the foregoing illegal conduct, when revealed, would expose Construtora AG and Andrade Gutierrez's other subsidiaries, including AG International, to regulatory scrutiny and financial penalties; (iii) Construtora AG's revenues were in part the product of illegal conduct and thus unlikely to be sustainable; and (iv) as a result of the foregoing, Defendants' statements about Construtora AG's and Andrade Gutierrez's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

6.      On December 30, 2014, as the investigation into the Petrobras bribery scheme continued, Petrobras announced that it was temporarily suspending 23 companies, including Andrade Gutierrez and its subsidiaries (including Construtora AG), from being hired by Petrobras or bidding on Petrobras contracts.

7.      On January 21, 2015, Moody's Investors Services ("Moody's") downgraded the rating of the 2018 Notes to Ba2 from Ba1, changing its outlook from "stable" to "negative". Explaining its rationale, Moody's cited, in part, "deterioration in industry fundamentals on the back of corruption scandals at Petrobras".

8.      On this news, the value of the 2018 Notes fell $7.34, or 9.92%, to $66.66 on January 21, 2015.

9.      On June 19, 2015, Brazilian officials arrested Otávio Azevedo, CEO of Andrade Gutierrez, alleging that Azevedo had helped mastermind the cartel that stole billions of dollars from Petrobras in collusion with corrupt politicians.

10.     On this news, the value of the 2018 Notes fell $11.93, or 14.13%, to $72.51 on June 19, 2015.

11.     On July 20, 2015, the Brazilian daily newspaper *Folha de S.Paulo* reported that Brazilian police had recommended charges against Azevedo in connection with his involvement in the Petrobras bribery scheme.

12.     On this news, the value of the 2018 Notes fell $6.71, or 8.53%, to $71.97 on July 20, 2015.

13.     On July 29, 2015, Judge Sergio Moro accepted prosecutors' recommendation and charged Azevedo and other conspirators in the Petrobras bribery scheme with corruption and money laundering.

14.     On this news, the value of the 2018 Notes fell $5.92, or 8.43%, to $64.25 on July 30, 2015.

15.     Subsequent events revealed that the illicit conduct by Andrade Gutierrez and its subsidiaries was not limited to its involvement in the Petrobras bribery scheme. On April 15, 2016, Flavio David Barra, the former president of Andrade Gutierrez Energy ("AG Energy"), a subsidiary of Andrade Gutierrez, testified that the company had paid bribes to executives of a subsidiary of Eletrobras, a major Brazilian electric utilities company, to secure a nuclear power plant contract.

16.     On May 9, 2016, Andrade Gutierrez announced that it had agreed to pay a $286 million fine as part of a leniency agreement approved by Judge Moro. In an ad entitled "An Apology and Proclamation for a Better Brazil" published in *Folha de S.Paulo*, the company stated that "Andrade Gutierrez owes a sincere apology to the Brazilian people".

17.     On September 19, 2016, Azevedo was sentenced to 18 years in prison by the State Court of Rio de Janeiro for his involvement in yet another bribery scheme. As part of a plea agreement, Azevedo admitted to paying more than $6 million in bribes over the years to Brazilian government officials to secure a contract related to the country's Belo Monte power plant.

18.     The Offering Memorandum issued in connection with AG International's offering of the 2018 Notes, as well as press releases issued by Andrade Gutierrez and Construtora AG during the Relevant Period, misrepresented material facts concerning Andrade Gutierrez's illegal conduct. When the truth about Andrade Gutierrez's and Construtora AG's operations was revealed in the corrective disclosures between January 21, 2015 and July 29, 2015 described above, the value of AG International's 2018 Notes significantly declined, harming Plaintiff.

## JURISDICTION AND VENUE

19.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5), and under the laws of the State of New York.

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa). In addition, in the Offering Memorandum for the 2018 Notes, AG International and Construtora AG "consent to the non-exclusive jurisdiction of the courts of the State of New York and the United States courts located in the Borough of Manhattan, New York City, New York with respect to any action that may be brought in connection with . . . the [2018] Notes".

21.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) because Plaintiff purchased AG International's 2018 Notes from broker-dealers and/or counterparties within this Judicial District.

22.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

23.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased AG International's 2018 Notes pursuant to domestic transactions, including but not limited to, the use of U.S. broker/dealers, as well as from counterparties located in the United States during the Relevant Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

24.     Defendant AG International is a wholly owned subsidiary of Andrade Gutierrez, incorporated in Luxembourg as a limited liability company, with registered offices at 65, Boulevard Grand-Duchesse Charlotte, L-1331 Luxembourg, Grand Duchy of Luxembourg. AG International is a non-operational finance vehicle, established in 2013 specifically to raise capital for the Andrade Gutierrez Group, and it is the issuer of the 2018 Notes.

25.     Defendant Construtora AG is the core business of the Andrade Gutierrez Group, a privately held multinational conglomerate incorporated in Brazil, with registered offices at Avenida do Contorno, 8123, Cidade Jardim, Belo Horizonte, Minas Gerais, Brazil.

26.     Defendant Andrade Gutierrez is a privately held multinational conglomerate incorporated in Brazil, with registered offices at Avenida do Contorno, 8123, Cidade Jardim, Belo

Horizonte, Minas Gerais, Brazil. As stated *supra* at ¶¶ 2 and 31, Andrade Gutierrez is the corporate parent of Defendants AG International and Construtora AG.

27.     The Defendants described in ¶¶ 24-26 are sometimes collectively referred to hereinafter as the "Corporate Defendants".

28.     Defendant Leandro de Aguiar served at all relevant times as the CEO and Chief Financial Officer of Construtora AG. Aguiar joined the Andrade Gutierrez Group in 1975.  As Construtora AG touted to investors in the Offering Memorandum, Aguiar is among the members of [the] senior management [who] have worked for over 30 years with [the Andrade Gutierrez Group] for over 30 years" and who are "fully comprised with the dissemination of our culture." Aguiar has previously served in other senior roles at the Andrade Gutierrez Group, including Vice President of Engineering and Construction.

29.     Defendant Otávio Azevedo served at all relevant times as the CEO of Andrade Gutierrez. Azevedo joined the Andrade Gutierrez Group in 1993.

30.     The Defendants described in ¶¶ 27 and 29 are sometimes collectively referred to hereinafter as the "Individual Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

31.     Construtora AG is one of the largest companies in the engineering and heavy construction sector in Latin America and the second largest in Brazil in terms of net revenue. Construtora AG engages in the construction of large and complex infrastructure projects, having participated in the construction of hydroelectric projects, roads, bridges, refineries, power plants, and stadiums. AG International, the issuer of the 2018 Notes, is a non-operational finance vehicle, established in 2013 specifically to raise capital for the Andrade Gutierrez Group, a private Brazilian multinational conglomerate. Construtora AG is the core business of the Andrade

Gutierrez Group. AG International and Construtora AG are both wholly owned subsidiaries of Andrade Gutierrez.

<strong>Materially False and Misleading<br>Statements Issued During the Relevant Period</strong>

32.      The Relevant Period begins on April 24, 2013, when AG International published its Offering Memorandum in connection with its offering of the 2018 Notes, with Construtora AG as guarantor. In its capacity as guarantor, Construtora AG was the primary author of the Offering Memorandum for the 2018 Notes and made the majority of the statements therein.

33.      The Offering Memorandum falsely advised investors that the Andrade Gutierrez and the Andrade Gutierrez Group adhered to high standards of corporate governance and were committed to transparency, stating, in relevant part;

**Corporate Governance**

Andrade Gutierrez S.A., our parent company, is a closed capital organization that annually publishes its segmented financial statements, despite not being obliged to do so, with the relevant figures of each business, in a transparent manner. The Annual Report, in the institutional web site, brings the performance in the financial, social and environmental spheres, with the period's radiography in the business fronts. The financial statements are public, available at the web site.

Andrade Gutierrez Group also aligns its corporate practices to standards issued by international entities, such as the International Finance Corporation, or IFC, European Development Fund, or EDF, Confederación Andina de Fomento, or CAF, *Banco Nacional de Desenvolvimento Econômico e Social*, or BNDES, Inter-American  Development Bank, or IDB, Overseas Private Investment Corporation, or OPIC and Export Development Canada, or EDC.

34.      The Offering Memorandum did not disclose to investors the involvement of Andrade Gutierrez and its subsidiaries in the Petrobras bribery scheme, the disclosure of which would foreseeably and subsequently did precipitate a political and economic crisis in Brazil. Rather, it contained only the following nonspecific, boilerplate recitation:

Possible political crises may affect the confidence of investors and the public in general, which may result in economic deceleration and, therefore, adversely affect the Brazilian securities markets and securities issued abroad by Brazilian companies.

35.     Similarly, under the heading "Criminal Proceedings", the Offering Memorandum again failed to disclose that the discovery of the involvement of Andrade Gutierrez and its subsidiaries in the Petrobras bribery scheme would foreseeably subject the companies and their officers to criminal charges, but merely stated:

We are party to a criminal proceeding to investigate the supposed disposal of waste in a landfill ("*Igarapé de Manaus*") in Manaus, Amazonia, without the allegedly required environmental permit. The evidence gathered in the proceeding so far was considered insufficient by the Public Attorney's Office, and the public prosecutor has ordered that further investigations of specific points be conducted. We are also involved in an indictment (*denúncia*) brought by the Public Attorney's Office related to a newspaper article claiming an alleged cartel for the public bidding process of the São Paulo subway, in which we would supposedly be involved. The judiciary branch has not decided if it will accept the indictment or not. The cartel accusation was dismissed by the Administrative Council for Economic Defense (*Conselho Administrativo de Defesa Econômica*), or CADE, the Brazilian Antitrust Tribunal, in a related administrative proceeding, and we have presented such decision as part of our defense. As a result of the CADE's decision our management does not believe that such proceeding will have any material adverse effect on us.

36.     The Offering Memorandum also presented certain consolidated financial data for Construtora AG from prior fiscal years:

| | Year ended December 31, | | |
| --- | --- | --- | --- |
| | 2012 | 2011 | 2010 |
| | *(in millions of R$, unless otherwise indicated)* | | |
| Net revenue from sales and services | 7,703.9 | 6,697.9 | 6,133.0 |
| EBITDA[(1)] | 559.5 | 861.1 | 776.7 |
| EBITDA Margin[(2)] | 7.3% | 12.9% | 12.7% |
| Income for the year | 121.3 | 396.3 | 364.2 |
| Backlog[(3)] (billions of R$) | 30.5 | 25.6 | 22.5 |
| Net Debt[(4)] | (271.7) | (407.9) | 103.7 |

37.     Again, the financial data presented to investors were misleading, because Construtora AG failed to disclose that its revenues, income, and EBITDA were the product, in part, of illicit conduct and therefore unlikely to be sustainable.

38.     In 2014, Brazilian investigators uncovered a sprawling corruption scheme centered on the Brazilian petroleum company Petrobras. Initially a money laundering investigation, Operation Lava Jato revealed the collusion of top Petrobras officials with an organized cartel of at least 16 companies to overcharge Petrobras for construction and service work in exchange for bribes and kickbacks totaling nearly $3 billion.

39.     Nonetheless, even as the Brazilian economy and government reeled from ongoing revelations of the scope and breadth of the Petrobras bribery scheme, Andrade Gutierrez continued to tout its purported commitment to the highest ethical standards and compliance with applicable laws. On December 12, 2014, Andrade Gutierrez published a press release, entitled "Transparency is the target of various AG programs and measures," stating:

> Transparency is one of the values that underpins AG's way of doing business. To establish a relationship of trust, ethics and credibility with our clients, investors, collaborators and partners, the Group works tirelessly to facilitate communication and access to information through various mechanisms.
>
> AG's Investor Relations sector focuses on sharing information that allows investors to assess the company's current performance and future prospects. AG Financial Superintendent Gustavo Coutinho explains how important it is to go beyond the basics: "We want to provide not just mandatory data, but financial transparency, the economic plans for the short and medium terms. Not just to present, but to explain." The AG portal currently features a dedicated area for relations with this audience. It provides investors, regulatory agencies, clients, suppliers, employees and the media with the company's results and analyses of the current market scenario.
>
> In the Compliance office, in turn, the main mission is to establish and continuously improve actions, practices and behaviors to ensure that the company's processes abide by its internal policies, the AG culture and the legislation in force, always guided by transparency, ethics and integrity.
>
> Ricardo Sena, president of AG Engineering & Construction, speaks about the company's commitment to the new policy: "We have a new governance model, modern and adapted to AG's challenges. In the coming years we will face great challenges, and we will only achieve our goals by communicating intensely."

Our new Code of Ethics and Conduct contains updated information about the company's position on things like human rights, environment, communication with the market and the press, government relations and respect to the precepts of fair trade, among others. Its objective is to ensure full compliance with the ethical principles of AG to create a fairer and more efficient business environment for the markets where it operates. Collaborators and the public at large can access the Code of Ethics through the "How we do it" section of this portal.

40.    On December 30, 2014, as the investigation into the Petrobras bribery scheme continued, Petrobras announced that it was temporarily suspending 23 companies, including Andrade Gutierrez and its subsidiaries (including Construtora AG), from being hired by Petrobras or bidding on Petrobras contracts.

41.    On January 20, 2015, following reports that Construtora AG, Andrade Gutierrez and the latter's CEO were under investigation in connection with Operation Lava Jato, Andrade Gutierrez issued a detailed rebuttal, stating, in part:

Due to the reports published about Andrade Gutierrez and its executive Otávio Azevedo, the company hereby clarifies the following facts:

. . .

[] It is strange the content and circumstances of the information on which Andrade Gutierrez and its executives have appeared on depositions, selectively leaked to the press in recent months. In every context there is never a direct accusation. The statements always begin with phrases like "I heard"; "I believe it is"; "Someone commented"; "Was known by others." Given this scenario, we strongly reject the attempt - only through inferences - to involve the company among those investigated by Operação Lava Jato. The insistence engaged in such acts seem to be the result of a need to include AG in the list of "cartel", regardless of the existence of fault and, even less, evidence.

. . .

[] Finally, we reiterate - as have been done from the beginning of investigations - that Andrade Gutierrez and its executives never participated in any favoritism scheme involving political parties and Petrobras. The contracts on which Andrade Gutierrez Construction [Construtora AG] figures as part, were achieved with strict observance of the rules and applicable law.

42.     On January 21, 2015, Moody's downgraded the rating of the 2018 Notes to Ba2 from Ba1, changing its outlook from "stable" to "negative". Explaining its rationale, Moody's cited, in part, "deterioration in industry fundamentals on the back of corruption scandals at Petrobras".

43.     On this news, the value of the 2018 Notes fell $7.34, or 9.92%, to $66.66 on January 21, 2015.

44.     On June 19, 2015, Brazilian officials arrested Otávio Azevedo, Andrade Gutierrez's CEO, alleging that Azevedo had helped mastermind the cartel at the heart of the Petrobras bribery scheme.

45.     On this news, the value of the 2018 Notes fell $11.93, or 14.13%, to $72.51 on June 19, 2015.

46.     In response, Andrade Gutierrez issued the following "Official Statement":

Andrade Gutierrez informs it is following the development of phase 14 of the police inquiry known as "Lava Jato" Operation and providing its executives with all the support they need. The company also notes it is collaborating with the investigations to ensure that all matters on the agenda are elucidated as quickly as possible. In fact, the recent arrests have come as a surprise since the company has not failed to respond to subpoenas and has presented itself voluntarily to deliver documents and clarify issues since the start of investigations. Andrade Gutierrez reiterates what it has stated since the investigation started: that it neither had, nor has, any involvement whatsoever with the facts investigated under the "Lava Jato" Operation and hopes that the Justice system can elucidate all matters as soon as possible.

47.     On July 20, 2015, the Brazilian daily newspaper *Folha de S.Paulo* reported that Brazilian police had recommended charges against Azevedo in connection with his involvement in the Petrobras bribery scheme on July 19, 2015.

48.     On this news, the value of the 2018 Notes fell $6.71, or 8.53%, to $71.97 on July 20, 2015.

49.     In response to news of the recommended charges against Azevedo, Andrade Gutierrez stated, in part:

> It must be noted that the measure is a **normal part** of the Operation and its expected context changes nothing in the company's <u>certainty that the executives charged are innocent</u>, as referred in its official press release.
>
> "The company reaffirms that it has **never been part** of a cartel or fraud in bidding processes.
>
> The company reaffirms that **there are neither objective grounds nor concrete** evidence to justify the arrest or indictment of its executives or former executives.
>
> Andrade Gutierrez states once again that it has always been ready to collaborate with police investigations and clarify all doubts as quickly as possible, reestablishing the truth of facts for once and for all and the innocence of the company and its executives."

(Emphases in original.)

50.     The statements referenced in ¶¶ 32-49 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about business, operations, and prospects of Andrade Gutierrez, Construtora AG and AG International. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Andrade Gutierrez and certain of its officers, including its Chief Executive Officer ("CEO"), Otávio Azevedo, had participated in a multibillion dollar organized bribery scheme, in collusion with other companies, to overcharge Petrobras for construction and service work; (ii) the foregoing illegal conduct, when revealed, would expose Andrade Gutierrez and its subsidiaries, including AG International and Construtora AG, to regulatory scrutiny and financial penalties; (iii) Construtora AG's revenues were in part the product of illegal conduct and thus unlikely to be sustainable; and (iv) as a result of the foregoing, Defendants' statements about Construtora AG's and Andrade Gutierrez's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

13

51.    On July 29, 2015, based on his review of the evidence, Judge Sergio Moro accepted prosecutors' recommendation and charged Azevedo and other conspirators in the Petrobras bribery scheme with corruption and money laundering.

52.    On this news, the value of the 2018 Notes fell $5.92, or 8.43%, to $64.25 on July 30, 2015.

53.    Subsequent events revealed that the illicit conduct by Andrade Gutierrez and its subsidiaries was not limited to its involvement in the Petrobras bribery scheme. On April 15, 2016, Flavio David Barra, the former president of AG Energy, testified that the company had paid bribes to executives of an Eletrobras subsidiary to secure a nuclear power plant contract.

54.    On May 9, 2016, Andrade Gutierrez announced that it had agreed to pay a $286 million fine as part of a leniency agreement approved by Judge Moro. In an ad entitled "An Apology and Proclamation for a Better Brazil" published in *Folha de S.Paulo*, the company stated that "Andrade Gutierrez owes a sincere apology to the Brazilian people."

55.    On September 19, 2016, Azevedo was sentenced to 18 years in prison by the State Court of Rio de Janeiro for his involvement in yet another bribery scheme. As part of a plea agreement, Azevedo admitted to paying more than $6 million in bribes over the years to Brazilian government officials to secure a contract related to the country's Belo Monte power plant.

56.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of AG International's 2018 Notes, Plaintiff has suffered significant losses and damages.

## COUNT I
### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59.     During the Relevant Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which it knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Relevant Period, did: (i) deceive the investing public, including Plaintiff, as alleged herein; (ii) artificially inflate and maintain the market price of AG International's 2018 Notes; and (iii) cause Plaintiff to purchase or otherwise acquire AG International's 2018 Notes and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

60.     Pursuant to the above plan, scheme, conspiracy and course of conduct, the Defendants participated directly or indirectly in the preparation and/or issuance of the statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AG International's 2018 Notes. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material

adverse information and misrepresented the truth about Defendants' involvement in the Petrobras bribery scheme.

61.     Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

62.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.

63.     As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AG International's 2018 Notes was artificially inflated throughout the Relevant Period. In ignorance of the adverse facts concerning AG International's business and financial condition which were concealed by Defendants, Plaintiff purchased or otherwise acquired AG International's 2018 Notes at artificially inflated prices and relied upon the price of the 2018 Notes, the integrity of the market for the 2018 Notes and/or upon statements disseminated by Defendants, and were damaged thereby.

64.     During the Relevant Period, AG International's 2018 Notes were traded on an active and efficient market. Plaintiff, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired AG International's 2018 Notes at

prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff known the truth, it would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff, the true value of AG International's 2018 Notes was substantially lower than the prices paid by Plaintiff. The market price of AG International's 2018 Notes declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff.

65.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with its purchases and/or acquisitions of AG International's 2018 Notes during the Relevant Period, upon the disclosure that Defendants had been disseminating false and misleading statements to the investing public.

**COUNT II**
**(Against the Individual Defendants and Andrade Gutierrez**
**For Violations of Section 20(a) of the Exchange Act)**

67.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Relevant Period, the Individual Defendants respectively participated in the operation and management of the Corporate Defendants, and conducted and participated, directly and indirectly, in the conduct of the Corporate Defendants' business affairs. Because of their senior positions, the Individual Defendants knew the adverse non-public information regarding the Corporate Defendants' involvement in the Petrobras bribery scheme.

69.     Andrade Gutierrez, as the corporate parent of Construtora AG and AG International, participated in the operation and management of both Construtora AG and AG International, and conducted and participated, directly and indirectly, in the conduct of its subsidiaries' business affairs. Because of its position as the corporate parent of Construtora AG and AG International, Andrade Gutierrez knew the adverse non-public information regarding its subsidiaries' involvement in the Petrobras bribery scheme.

70.     The Individual Defendants, as senior officers of the Corporate Defendants, had a duty to disseminate accurate and truthful information with respect to the Corporate Defendants' involvement in the Petrobras bribery scheme, and to correct promptly any public statements issued by the Corporate Defendants which had become materially false or misleading.

71.     Andrade Gutierrez, as the corporate parent of Construtora AG and AG International, had a duty to disseminate accurate and truthful information with respect to its subsidiaries' involvement in the Petrobras bribery scheme, and to correct promptly any public statements issued by its subsidiaries which had become materially false and misleading.

72.     By virtue of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the statements and documents described above concerning the Corporate Defendants. Throughout the Relevant Period, the Individual Defendants exercised their power and authority to cause the Corporate Defendants to engage in the wrongful acts complained of herein. The Individual Defendants therefore were "controlling persons" of the Corporate Defendants within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AG International's 2018 Notes.

73.     By virtue of its position of control and authority as the corporate parent of Construtora AG and AG International, Andrade Gutierrez was able to, and did, control the contents of the statements and documents described above concerning Construtora AG and AG International. Throughout the Relevant Period, Andrade Gutierrez exercised its power and authority to cause its subsidiaries to engage in the wrongful acts complained of herein. Andrade Gutierrez was therefore a "controlling person" of Construtora AG and AG International within the meaning of Section 20(a) of the Exchange Act. In this capacity, it participated in the unlawful conduct alleged which artificially inflated the market price of AG International's 2018 Notes.

74.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Corporate Defendants, and Andrade Gutierrez is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Construtora AG and AG International.

## COUNT III
### (Against All Defendants For Negligent Misrepresentation)

75.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.     Defendants had a duty to impart correct information to Plaintiff in the Offering Memorandum and subsequent press released during the Relevant Period.

77.     In choosing to purchase AG International's 2018 Notes, Plaintiff reasonably relied on the information provided by Defendants in the Offering Memorandum and subsequent press releases during the Relevant Period.

78.     As the charges against Andrade Gutierrez's CEO, Otávio Azevedo, and Andrade Gutierrez's subsequent leniency agreement, $286 million fine, and public apology made clear, the

information provided by Defendants in the Offering Memorandum and subsequent press releases during the Relevant Period was incorrect.

79.     By its reliance on the incorrect information provided by Defendants in the Offering Memorandum and subsequent press releases during the Relevant Period, Plaintiff has suffered damages, because when the truth about Defendants' involvement in the Petrobras bribery scheme came to light, the value of the 2018 Notes sharply declined.

### COUNT IV
### (Against All Defendants for Common Law Fraud)

80.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.     The Offering Memorandum and subsequent press releases during the Relevant Period contained numerous statements by Defendants regarding the Corporate Defendants' business and financial condition.

82.     As the charges against Andrade Gutierrez's CEO, Otávio Azevedo, and Andrade Gutierrez's subsequent leniency agreement, $286 million fine, and public apology made clear, the Offering Memorandum and subsequent press releases during the Relevant Period contained false statements by Defendants regarding, *inter alia*, Defendants' involvement in the Petrobras bribery scheme.

83.     Defendants made these false statements with the intent to conceal Defendants' involvement in the Petrobras bribery scheme in an effort to deceive Plaintiff and other investors, induce them to purchase AG International's 2018 Notes, and thereby raise additional capital for AG International.

84.     In choosing to purchase AG International's 2018 Notes, Plaintiff reasonably relied on the false statements by Defendants in the Offering Memorandum and subsequent press releases during the Relevant Period.

85.     By its reliance on the false statements by Defendants in the Offering Memorandum and subsequent press releases during the Relevant Period, Plaintiff has suffered damages, because when the truth about Defendants' involvement in the Petrobras bribery scheme came to light, the value of the 2018 Notes sharply declined.

## COUNT V
### (Against All Defendants For Unjust Enrichment)

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     By providing incorrect information in the Offering Memorandum and subsequent press releases issued during the Relevant Period concerning the involvement of Andrade Gutierrez, its subsidiaries, and its officers in the Petrobras bribery scandal, the Corporate Defendants induced Plaintiff to purchase AG International's 2018 Notes, thereby raising additional capital for Construtora AG and the Andrade Gutierrez Group.

88.     The Defendants thereby received and retained a benefit from Plaintiff.

89.     The amount of Defendants' unjust enrichment should be disgorged, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Requiring Defendants to pay damages sustained by Plaintiff by reason of the acts and transactions alleged herein;

B.      Awarding Plaintiff prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

C.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  December 28, 2016                         Respectfully submitted,

                                                 **THE ROSEN LAW FIRM, P.A.**

                                                 By: /s/ Phillip Kim
                                                 Phillip Kim, Esq. (PK 9384)
                                                 Laurence M. Rosen, Esq. (LR 5733)
                                                 275 Madison Avenue, 34th Floor
                                                 New York, New York 10016
                                                 Telephone: (212) 686-1060
                                                 Facsimile: (212) 202-3827
                                                 Email: pkim@rosenlegal.com
                                                          lrosen@rosenlegal.com

                                                 *Counsel for Plaintiff*